UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| DILLARD GUFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-64-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,* | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Dillard Guffey and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security. [Record Nos. 23, 25] Guffey contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claims for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [Record No. 23] He requests that the Commissioner's decision be reversed and that a decision be entered, finding him disabled. [*Id.* at 9] As alternative relief, Guffey requests that his case be remanded for additional findings. [*Id.*] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 25] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Guffey.

---

\*       Nancy A. Berryhill is the Acting Commissioner of Social Security, and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

# I.

Guffey filed applications on September 26, 2013 for a period of disability and DIB under Title II and SSI under Title XVI of the Social Security Act ("the Act"). [Administrative Transcript, "Tr.," 179, 187] He alleged that his disability began on February 7, 2006, in the applications, but subsequently amended his alleged onset date to August 4, 2007. [Tr. 32] The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. [Tr. 77-80] Thereafter, an administrative hearing was held before ALJ Peter Jung [Tr. 26-54] and the ALJ issued a written opinion. [Tr. 10-25] Guffey then sought review by the Appeals Council, which was denied. [Tr. 1]. Guffey has exhausted his administrative remedies and his case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Guffey was fifty-three years old at the time of the ALJ's decision. [Tr. 179] He has an eighth-grade education and has been employed as a construction worker and carpenter for twenty-seven years. [Tr. 32-33, 219-20] Guffey stopped working in 2006 due to severe pain in his lower back, shoulders, and neck. [Tr. 32-33, 219-20] Guffey testified that he has suffered from lower back pain for approximately fifteen years, but has worked through the pain in the past. [Tr. 36] His back pain is aggravated by heavy lifting, bending, and prolonged sitting or standing. [*Id.*] He takes morphine to alleviate the pain. [*Id.*] He is able to lift a gallon of milk, but has difficulty sitting in straight-back chairs, and sleeps in a recliner rather than flat on a bed. [Tr. 43, 37] His back pain radiates down into his hips and legs, and he uses cruise control when he drives because it hurts his hips to keep his foot on the gas pedal. [Tr. 39-40]

As noted, Guffey testified that he has experienced pain in his neck and shoulders for approximately fifteen years. [Tr. 37-38] He has experienced pain in his right arm for approximately six years, and he recently began taking medication for hand tremors. [Tr. 38, 41] Finally, Guffey reported heartburn and difficulty swallowing and digesting food. [Tr. 40]

William Waltrip, M.D., performed a consultative examination of Guffey on December 9, 2013. [Tr. 557-562] He noted that Guffey was moderately obese, but observed no limitations in the range of motion in his back, no muscle tenderness or muscle spasms, and no loss of sensation in his back. [Tr. 559] Guffey could walk with a normal gait, heal-to-toe and tandem, and without an assistive device. [*Id.*] He could perform knee squats and walk on the tip of his toes and heels. [*Id.*] Dr. Waltrip also found no deformity, redness or tenderness in any joint or extremity. [*Id.*] Guffey could make a fist, had good grip strength, and could perform fine manipulation. [*Id.*] His deep tendon reflexes were normal. [*Id.*] Dr. Waltrip concluded that Guffey has very minimal limitation of walking, standing or sitting, no motor dysfunction, sensory loss, or reflex abnormalities, and should be able to lift objects weighing up to thirty-five to forty pounds without limitation. [Tr. 560]

Guffey underwent an MRI of his lumbar spine on March 10, 2014. [Tr. 581] The MRI revealed normal alignment, no disc bulge at L3/4, and a mild disc bulge at L4/5 with moderate spurring endplates and facets and mild narrowing of the foramina. [*Id.*] The MRI also noted moderate spurring of the facets at the L5/S1 level, with mild narrowing of the foramina. [*Id.*]

Guffey saw his treating physician, Sherrell Roberts, M.D., six times regarding complaints of back pain from March through October 2014. [Tr. 603, 610, 612, 614, 618, 621] Dr. Roberts' examinations indicated that Guffey was not in acute distress, and examinations

of his cervical, thoracic, and lumbosacral spines did not indicate tenderness to palpation, pain, swelling, edema or erythema of surrounding tissue. [*Id.*]

Jack Reed, M.D., reviewed Guffey's file and provided his opinion regarding Guffey's residual functional capacity ("RFC") on April 2, 2014 as part of the reconsideration of Guffey's initial denial. [Tr. 81-100] Dr. Reed found that Guffey had abilities consistent with medium exertion work, and that he could lift or carry fifty pounds occasionally and twenty-five pounds frequently. [Tr. 96] Dr. Reed believed that Guffey could stand and/or walk for a total of six hours in an eight hour workday and sit with normal breaks for a total of six hours in an eight hour workday. [*Id.*] He noted no limitations in Guffey's ability to push and/or pull, and no postural, manipulative, visual, communicative, or environmental limitations. [*Id.*]

Dr. Roberts completed a physical assessment regarding Guffey's ability to perform work-related activities on October 1, 2015. [Tr. 745] Based on Guffey's MRI, Dr. Roberts concluded that Guffey could stand, walk, and sit for eight hours in an eight hour workday, but only one hour without interruption, and that Guffey could only lift or carry ten pounds occasionally. [Tr. 745-46] He believed that Guffey could occasionally climb, kneel, crouch, stoop, balance, and crawl, and that Guffey had no impairment reaching, handling, feeling, seeing, hearing, or speaking. [Tr. 746] However, he believed that Guffey's back would not tolerate heavy pushing or pulling, and that temperature extremes and vibration would worsen his back pain. [Tr. 746-747] As a result, Dr. Roberts did not feel that Guffey could continue to work at the jobs he had performed in the past. [Tr. 747]

ALJ Jung issued a decision on December 1, 2015, finding that Guffey has not been under a disability since August 4, 2017, his amended alleged onset date. [Tr. 10] The ALJ found that Guffey had the following severe impairments: degenerative disc disease of the

lumbar spine, thoracic outlet syndrome, a bilateral shoulder disorder, obesity, and gastro esophageal reflux disease. [Tr. 15]  However, ALJ Jung determined that Guffey did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [*Id.*]

The ALJ found that Guffey's medically determinable impairments could reasonably be expected to cause the symptoms he alleges, but that his allegations regarding intensity, persistence, and limiting effects were not fully credible. [Tr. 17]  Specifically, the ALJ noted that, according to an emergency room report from April 5, 2014, Guffey was injured "tearing [a] building down," [Tr. 589], suggesting that Guffey "may not be entirely forthright in discussing his recent activity level." [Tr. 18]

The ALJ observed that "recent physical examinations note that claimant is in no acute distress, has no pain or tenderness to palpation of the upper or lower spine, and has normal range of motion, normal gait, and no difficulty standing. Treatment notes state that pain is controlled with morphine." [Tr. 17]  Because the physical examinations reported normal to nearly normal signs and findings of the neck, back, and extremities, with normal gait and no difficulty walking, the ALJ concluded that "it is reasonable to expect that [Guffey] would be able to work consistent with the limitations set forth by Dr. Waltrip, whose opinion is given great weight as it is consistent with the underlying medical treatment history . . . ." [Tr. 18] Similarly, the ALJ gave great weight to the medical source statements of state agency medical consultant Dr. Jack Reed, "whose opinion that claimant is capable of medium work is also consistent with the overall evidence." [*Id.*]  However, ALJ Jung gave little weight to the medical source statements of treating physician Dr. Sherrell Roberts, "whose opinion that claimant is limited to lifting no more than ten pounds is inconsistent with the underlying

medical signs and findings showing few if any abnormalities in claimant's neck, back, and extremities as detailed above." [*Id.*]

The ALJ determined that Guffey has the RFC to lift and carry fifty pounds occasionally and up to twenty-five pounds frequently. [*Id.*] The ALJ found that Guffey is unable to perform any past relevant work, but, based on vocational expert testimony, there are jobs that exist in significant numbers in the national economy that Guffey can perform, such as dishwasher, dining room attendant, and linen room attendant. [Tr. 18-19] Thus, the ALJ concluded that Guffey has not been under a disability since his amended alleged offset date. [Tr. 20]

**II.**

A "disability" is defined under the Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The burden shifts to the Commissioner with respect to the fifth step if the claimant satisfies the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at

least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work under the fifth step of the analysis. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 404.416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III**.

**A.     The ALJ Properly Weighed the Opinions of Non-Examining Physicians.**

Guffey contends that the ALJ improperly accorded great weight to the opinions of non-treating physicians that were contrary to the opinion of the treating physician.  While a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case," 20 C.F.R. §§ 404.1527(c)(2), the treating physician's opinion can be properly discounted "if there is substantial medical evidence to the contrary or the physician provided a conclusory opinion that claimant is unable to work," or the opinion "was inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings." *Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 426 (6th Cir. 2014) (citing *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012)); *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ . . . is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").  In short, "[a]n administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer*, 568 F. App'x at 428.

The ALJ gave "great weight" to consultive examiner Dr. Waltrip's opinion that Guffey would be able to lift up to forty pounds without limitation, because it "is consistent with the underlying medical treatment history and the normal to nearly normal signs and findings showing little wrong with the claimant." [Tr. 18]  The ALJ also gave great weight to state agency medical consultant Dr. Reed's opinion that Guffey is capable of medium work "is

consistent with the overall evidence." [*Id.*] However, the ALJ gave "little weight" to treating physician Dr. Roberts' opinion that Guffey is limited to lifting no more than ten pounds because it was "inconsistent with the underlying medical signs and findings showing few if any abnormalities in the claimant's neck, back, and extremities." [*Id.*] Dr. Roberts stated, in a single sentence, that this opinion was based on "osteoarthritis of lumbar spine on MRI." [Tr. 745] However, in his six examinations of Guffey after the MRI was taken, Dr. Roberts noted that Guffey was not in acute distress, and examinations of his cervical, thoracic, and lumbosacral spines resulted in no tenderness to palpation, no pain, no swelling, edema or erythema of surrounding tissue. [Tr. 603, 610, 612, 614, 618, 621] These observations, which are consistent with Dr. Waltrip's earlier examination, informed the ALJ's decision to accord great weight to Dr. Waltrip's opinion and to discount Dr. Roberts' assertion that Guffey is incapable of lifting more than ten pounds occasionally. [Tr. 18]

Guffey's assertion that Dr. Waltrip is a non-examining physician is simply incorrect. Dr. Waltrip performed a consultative examination of Guffey on December 9, 2013. [Tr. 557-562] As an examining physician, Dr. Waltrip's opinion is entitled to greater weight than Guffey asserts. 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

Dr. Jack Reed, by contrast, is non-examining physician. However, it is proper to consider the opinions of state agency medical consultants. See 20 C.F.R. § 404.1527(e). And because state agency consultants are considered experts in the Social Security disability programs, their opinions may be entitled to great weight if they are supported by the evidence of the record. *See* 20 C.F.R. § 416.1527(f)(2); SSR 96–6p, 1996 WL 374180 (July 2, 1996);

*see also Hibbard v. Astrue*, 537 F. Supp. 2d 867 (E.D. Ky. 2008). Additionally, contrary to Guffey's contention, it is not per se error to ascribe more weight to a non-examining physician over an examining or treating physician. *See, e.g.*, *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x. 636, 642 (6th Cir.2013) (observing that, in appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources).

While Dr. Roberts cited the MRI as an objective basis for his opinion that Guffey could not lift more than ten pounds [Tr. 747], this opinion was quite conclusory, and in conflict with much of the record. By contrast, Dr. Waltrip's examination and opinion was consistent with the later examinations conducted by Dr. Roberts and the opinion issued by Dr. Reed. Although Dr. Waltrip did not have the benefit of Guffey's MRI when conducting his examination, Dr. Reed did review Guffey's MRI before rendering an opinion consistent with Dr. Waltrip's opinion.

Thus, the Commissioner's decision is supported by substantial evidence. Even though Guffey would weigh the medical opinions differently, it is not this Court's place to reweigh the evidence. Even if a contrary finding would also have been supported by substantial evidence, the Court must affirm the Commissioner's decision where the evidence supports it. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996).

    **B.    The ALJ Provided Adequate Reasons for Giving the Treating Physician's Opinion "Little Weight".**

Guffey also contends that the ALJ erred by failing to provide good reasons for discounting the medical opinions of Dr. Roberts. The social security regulations require that

an ALJ must provide "good reasons" for the weight he gives to the treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).[1] Under this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)). Supplying good reasons for the weight accorded to a treating source's opinion allows claimants to understand the disposition of their cases, and facilitates meaningful review of the ALJ's application of the rule. *Id.* at 544-45.

The good reasons requirement confers a "substantial right" on claimants, and non-compliance is not excused simply because there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. *Id.* at 546. However, failing to provide good reasons may be harmless error in certain circumstances, including when: (i) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (ii) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (iii) the Commissioner has met the goal of § 1527(d) even though he has not complied with the terms of the regulation. *Id.* at 547.

The ALJ meets the goal but not the terms of the regulation when the ALJ "indirectly attack[s] the 'supportability' of the doctor's opinion, § 404.1527(d)(3), or the 'consistency' of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for

---

[1] This regulation is now located at 20 C.F.R. § 404.1527(c)(2).

rejecting a treating source opinion, *see* § 404.1527(d)(3)."[2] *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). The critical inquiry here is not whether the ALJ did reject the treating physician's opinion, but whether the ALJ implicitly provided sufficient reasons for rejecting it. *Hall*, 148 F. App'x at 456.

Dr. Roberts believed that Guffey could lift no more than 10 pounds. [Tr. 747] The ALJ rejected this finding because it was "inconsistent with the underlying medical signs and findings." [Tr. 18] Guffey argues that the ALJ's explanation is inadequate because it does not specifically reference the "inconsistencies" between Dr. Roberts' opinion and the record, making it difficult for subsequent reviewers to understand the ALJ's rationale. This argument is unpersuasive. The ALJ found that "physical examinations note normal to nearly normal signs and findings of the neck, back, and extremities, with normal gait and no difficulty walking." [Tr. 18] The ALJ accorded great weight to Dr. Waltrip's opinion because "it is consistent with the underlying medical treatment history and the normal to nearly normal signs and findings showing little wrong with claimant." [Tr. 18] He gave little weight to Dr. Roberts' opinion because it "is inconsistent with the underlying medical signs and findings showing few if any abnormalities in claimant's neck, back, and extremities as detailed above." [Tr. 18] These reasons are easy to follow, and not rendered inadequate by the mere lack of citation.

Guffey next argues that, even if the ALJ properly discredited Dr. Roberts' statement that Guffey could only occasionally lift or carry ten pounds, he failed to address other

---

[2] These regulations are now located at 20 C.F.R. § 404.1527(c)(3)-(4).

statements by Dr. Roberts, including his statements: (i) regarding control of back pain with morphine; (ii) that Guffey could climb, kneel, crouch, stoop, balance and crawl from very little to one third of an eight hour day and not on a daily basis, and (iii) that Guffey's back could not tolerate heavy pushing or pulling. While Guffey is correct that the ALJ did not discuss the weight he attached to any of these statements, failure to do so was harmless because in each instance the ALJ either adopted the opinion of the treating source or made findings consistent with the opinion, or indirectly attacked the consistency of the doctor's opinion with the record as a whole. *See Wilson*, 378 F.3d at 547; *Hall*, 148 F. App'x at 464; *Nelson*, 195 F. App'x at 470.

First, Guffey attaches great significance to the semantic difference between the ALJ's finding that "[t]reatment notes state that pain is controlled with morphine" and Dr. Roberts' statements that "the pain is improved but not 100% relieved with morphine" [Tr. 747] and "back pain is controlled with morphine *where he can function*" [Tr. 610] (emphasis added). But stating that the pain is "controlled" with morphine does not imply that it is "100% relieved with morphine," and omitting the words "where he can function" does not imply a rejection of Dr. Roberts' opinion. Accordingly, the ALJ's finding was consistent with the treating physician's opinion, and failing to provide reasons for the weight accorded to it was harmless.

Second, the ALJ's finding that Guffey could "occasionally climb ropes, ladder, or scaffolds, frequently balance stoop, kneel, crouch, and crawl" [Tr. 16] is consistent with Dr. Roberts' opinion that Guffey could climb, kneel, crouch, stoop, balance and crawl "from very little to one-third an 8-hour day" [Tr. 746]. *See* SSR 83-10, 1983 WL 31251, *5 (Jan. 1, 1983) ("'Occasionally' "means occurring from very little up to one-third of the time.") Indeed, Dr.

Roberts expressly states that Guffey can "occasionally" perform these activities. [Tr. 746] Thus, failing to provide reasons for the weight accorded to that opinion was harmless.

Finally, the ALJ did not make any findings inconsistent with Dr. Roberts' statement that Guffey's "back will not tolerate heavy pushing or pulling." [Tr. 746] While Dr. Roberts did not quantify what he meant by "heavy pushing or pulling," the most natural interpretation is that Guffey's back will not tolerate "heavy work," which "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d). So interpreted, the ALJ's finding that Guffey could perform medium work is consistent with Dr. Robert's statement, and failing to provide reasons for the weight accorded to that opinion would be harmless.

To the extent that the ALJ's finding that Guffey can lift and carry "fifty pounds occasionally and up to twenty-five pounds frequently" is inconsistent with Dr. Roberts' opinion that Guffey's back will not tolerate heavy pushing or pulling, the ALJ indirectly attacked the consistency of that opinion. He did so by explaining that Dr. Roberts' opinion that Guffey is limited to lifting no more than ten pounds is inconsistent with the underlying medical signs and findings showing few if any abnormalities in Guffey's neck. [Tr. 18]; *see Nelson*, 195 F. App'x at 470 (explaining that an ALJ can indirectly attack the consistency of a treating physician's opinion by his analysis of the treating source's other opinions). This implies that, to the extent that Dr. Roberts' opinion that Guffey's back will not tolerate heavy pushing or pulling is inconsistent with a finding that Guffey can perform medium work, it too is inconsistent with the underlying medical record. As a result, the ALJ's failure to explain what weight was accorded to that statement is harmless error under either interpretation.

**IV**.

The ALJ provided good reasons for the weight he accorded to the treating physician's opinions, and his opinion is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 25] is **GRANTED**.

2. Plaintiff Dillard Guffey's Motion for Summary Judgment [Record No. 23] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by a separate judgment entered this date.

This 28th day of August, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge